### A91A0664. BORDEN v. POPE JEEP-EAGLE, INC.
(407 SE2d 128)

Pope, Judge.

On December 1, 1988, plaintiff/appellant Ronald E. Borden contracted with defendant/appellee Pope Jeep-Eagle, Inc., to purchase a 1989 Jeep Cherokee. Plaintiff traded in his 1986 Isuzu Trooper II as part of the deal. During the negotiations for the vehicle, plaintiff told the salesperson with whom he was dealing that he wanted a simple interest car loan. Plaintiff testified that the finance manager for defendant told him that there was no such thing as a simple interest car loan. After it became apparent that plaintiff was not going to purchase the vehicle unless he was given a simple interest loan, the finance manager produced a simple interest car loan. The form of that loan recited that the assignee of the loan would be First National Bank of Atlanta.

Plaintiff was asked by defendant to sign an additional form regarding the loan, which provided that the loan had not been officially approved by First Atlanta and that the defendant reserved the right to void the contract if First Atlanta did not approve the loan within three working days from the original delivery date. The form also provided that "[i]t is further understood that said vehicle will be returned by customer at Pope Jeep Eagle Inc.'s request if financing cannot be arranged." It was signed by plaintiff and defendant's representative. Plaintiff accepted delivery of the new vehicle on that same evening, December 1, 1988.

Plaintiff testified that on December 9, 1988, plaintiff received a call from the salesperson with whom he had dealt. The salesperson told him that he needed to return to re-execute some papers. When plaintiff inquired about exactly what he needed to sign, the salesperson refused to be more specific. Plaintiff also testified that beginning on or about December 13, 1988, he began receiving calls from defendant's employees approximately once or twice a day telling him that he needed to return to execute certain papers, but the callers would not be more specific. Plaintiff further testified that on or about December 20, 1988, he received a call from the new car sales manager for defendant, who told him that if he "did not come in and resign these papers . . . they would come out to my apartment and arrest me, have the sheriff come to my apartment and arrest me for theft." The

new car sales manager denied those allegations. Defendant presented further evidence that it was their policy to never harass or threaten a customer. The evidence showed, however, that defendant was unable to sell plaintiff's loan to First Atlanta and wanted plaintiff to agree to different contract terms so that his loan would be more marketable.

Shortly after plaintiff was contacted by defendant concerning rescission of the contract for sale of the vehicle, plaintiff sought the advice of legal counsel and on January 13, 1989, wrote to defendant insisting that the contract be honored, as written. It was stipulated by the parties that plaintiff's trade-in was sold on December 10, 1988. The evidence is undisputed that even though defendant maintained that the contract had been rescinded, plaintiff made four payments on the vehicle, via certified mail, which defendant accepted. Defendant, however, refused to present plaintiff's checks for payment in a timely manner. Plaintiff refused to make further payments to defendant. After plaintiff's loan was in arrears four months, defendant repossessed the vehicle in question on September 19, 1989. Two days later, on September 21, 1989, defendant sent a letter to plaintiff informing him that the vehicle would be sold by private sale on October 5, 1989. Defendant, however, did not sell the vehicle until after the defendant prevailed at trial. Plaintiff did not purchase another vehicle before trial.

On December 8, 1989, plaintiff filed suit against defendant alleging the defendant's conduct gave rise to claims for fraud, breach of contract, wrongful repossession, a violation of the Georgia Fair Business Practices Act, and a violation of the Georgia RICO Act.[1] Defendant counterclaimed for breach of contract. A jury trial was conducted in this case in DeKalb State Court on August 14 and 15, 1990. The jury returned a verdict in favor of defendant and awarded defendant $18,830.11 on its counterclaim. Plaintiff moved for a new trial, but the trial court denied that motion.

Plaintiff filed this appeal asserting the following enumerations of error: (1) the verdict below is contrary to law and is an illegal verdict; (2) the trial court erred in excluding evidence that defendant refused to present plaintiff's payment checks in a timely manner; (3) the trial court erred in failing to charge the jury on estoppel; (4) the trial court erred in failing to charge the jury on the Fair Business Practices Act; (5) the trial court erred in failing to charge the jury on fraud; (6) the trial court erred in failing to charge the jury on tort liability; and (7) the trial court erred in failing to charge the jury on wrongful repossession.

1. We will first address plaintiff's assertion that it was error for

---

[1] Plaintiff later withdrew his Georgia RICO Act claim.

the trial court to refuse to charge the jury regarding the Fair Business Practices Act ("FBPA"). The law is well-settled in Georgia that even though a single instance of an unfair or deceptive act can be a sufficient basis for a claim under the FBPA, that act does not apply to suits based upon deceptive practices which occur in transactions that are essentially private. *Zeeman v. Black*, 156 Ga. App. 82, 84-86 (273 SE2d 910) (1980). In other words, " '[u]nless it can be said that the defendant's actions had or has potential harm for the consumer public the act or practice cannot be said to have "impact" on the consumer marketplace and any "act or practice which is outside that context, no matter how unfair or deceptive, is not directly regulated by the FBPA.' " *Waller v. Scheer*, 175 Ga. App. 1, 4 (332 SE2d 293) (1985) (quoting *Zeeman*, supra at 84). Although plaintiff alleges it was error for the trial court to refuse to instruct the jury concerning the FBPA, we assume that the plaintiff is in fact appealing the trial court's decision to direct a verdict for defendant as to that claim. A directed verdict is proper when there is no conflict of evidence as to any material issue and the evidence, together with all reasonable deductions therefrom, demands a particular verdict. *Kent v. Hunt & Assoc.*, 165 Ga. App. 169, 170 (299 SE2d 123) (1983); *Jones v. Smith*, 160 Ga. App. 147, 148 (286 SE2d 478) (1981).

The trial court did not err in directing a verdict for defendant on the FBPA claim. There is no evidence that the defendant's actions in this transaction had the potential for harming the general public. Defendant did not advertise simple interest contracts to the general public nor was there evidence that it was defendant's practice to sell cars promising simple interest installment loans and later attempt to dishonor those contracts. Defendant entered into a simple interest installment loan with plaintiff at plaintiff's urging. Accordingly, the trial court's dismissal of plaintiff's claim under the FBPA was correct.

2. We find plaintiff's contentions that the trial court erred in failing to charge the jury on estoppel and in excluding evidence that defendant had not deposited plaintiff's payments in a timely manner to be without merit. Plaintiff seeks to have this court equate defendant's delay in depositing the checks received from plaintiff to those cases in which one prohibits another from being able to perform a contract and then sues the nonperforming party for breach of contract. See, e.g., *Kent*, supra. The facts of this case do not allow for such an analogy. Plaintiff had a legal obligation to pay for the automobile he purchased from defendant. Although there was evidence that First Atlanta was named as a secured party on the title of plaintiff's vehicle, plaintiff at all times knew that defendant held the note to his vehicle. Since plaintiff sought to affirm the installment loan contract he had entered into with defendant and keep the vehicle, he was obligated to make payments to that party. While defendant's refusal to cash plain-

tiff's checks may have been frustrating for plaintiff, it did not change plaintiff's obligations under the contract nor did it prevent plaintiff's ability to perform thereunder. As plaintiff correctly pointed out in his supplemental brief to this court, when a party that received a check does not present the check for payment within a reasonable time, the party issuing the check may assume that it has been accepted. *Studstill v. Amer. Oil Co.*, 126 Ga. App. 722, 725 (191 SE2d 538) (1972), aff'd and remanded 230 Ga. 305 (196 SE2d 847) (1973). For these reasons, the trial court correctly refused to give plaintiff's requested charges on estoppel and prevention of contract performance.

3. Plaintiff also contends that the trial court erred in failing to charge the jury on wrongful repossession. As this court held in *Hopkins v. First Union Bank*, 193 Ga. App. 109, 113 (387 SE2d 144) (1989), wrongful repossession occurs when a repossession is accompanied by a wrongful act, which shall mean an act that "is in contravention of some legal duty owed to the party from whose possession the vehicle is being taken." Plaintiff argues that defendant's untimely acceptance of plaintiff's payments constitutes a wrongful act. As discussed above, while defendant's failure to present plaintiff's checks for payment in a timely manner may have been frustrating to plaintiff, defendant did not owe plaintiff a legal duty to submit plaintiff's checks to his bank for payment. By refusing to present the checks for payment in a timely manner, defendant simply placed itself in the precarious situation that the checks might be dishonored when defendant decided to present them for payment. Thus, the tort of wrongful repossession cannot be based on defendant's actions in that regard.

Plaintiff further argues that defendant's untimely acceptance of plaintiff's payments — also untimely on occasion — evidences mutual departure from the contract and the defendant should have notified plaintiff pursuant to OCGA § 13-4-4 that defendant intended to rely on the exact terms of the agreement before defendant sought to pursue its remedies under the contract. Plaintiff seems to suggest that defendant's conduct of not presenting plaintiff's checks in a timely manner for payment can be interpreted as defendant acquiescing in plaintiff's use of the vehicle without payment. "As a general rule, evidence of acceptance by a creditor of repeated, late, irregular payments from a debtor creates a factual question as to the formation of a quasi new agreement." *Lewis v. C & S Nat. Bank*, 174 Ga. App. 847, 848 (332 SE2d 11) (1985). In this case, as in *Lewis*, the plaintiff's payments were not merely late and irregular, but the indisputed evidence showed that plaintiff had totally failed to make four payments. As this court held in *Lewis*, under such circumstances the secured party is clearly entitled to seek its remedies under the contract including acceleration of the debt and foreclosure proceedings, without giving

the notice contemplated by OCGA § 13-4-4, even if defendant had accepted untimely payments in the past. Id. In light of the evidence presented at trial, the trial court did not err in failing to charge the jury on the tort of wrongful repossession.

4. We next address plaintiff's contention that the trial court erred in refusing to give the jury his requested charges on fraud and torts. Plaintiff seemingly asserts several bases for its fraud claim against defendant. First, plaintiff attempts to premise a fraud claim on the evidence presented that defendant either knew or should have known that First Atlanta would not purchase the contract in question, but induced plaintiff into entering into the contract in question by leading plaintiff to believe that First Atlanta would become the assignee of the contract. Second, plaintiff alleges that defendant falsely represented that plaintiff must return the Jeep or face criminal charges. Finally, plaintiff claims that defendant's conduct with regard to his trade-in gives rise to a fraud claim. The elements of fraud are: (1) that the defendant made the representations; (2) that at the time he made them he knew they were false; (3) that he made them with the purpose of deceiving plaintiff; (4) that plaintiff relied on those representations; and (5) that the loss or damage suffered by plaintiff was the proximate result of the false representations made by defendant. *Thompson v. Huckabee Auto Co.*, 190 Ga. App. 540, 542 (379 SE2d 411) (1989).

With regard to plaintiff's claims that fraud can be premised on defendant's statement that he would be subjected to criminal charges if he did not return the Jeep and on defendant's conduct with regard to his trade-in, there was no evidence presented at trial that plaintiff relied on those statements or acts or that plaintiff suffered any damage as a result thereof.

With regard to plaintiff's claim that there was fraud in the inducement of the contract, the law is well-established in Georgia that fraud in the inducement renders a contract voidable at the election of the injured party. OCGA § 13-5-5. When a " 'purchaser affirms a contract which contains a merger or disclaimer provision and retains the purchased articles, he is estopped from asserting that he relied upon the seller's misrepresentation and his action for fraud must fail. [Cits.]' " *Roth v. Bill Heard Chevrolet*, 166 Ga. App. 583, 584 (305 SE2d 31) (1983) (quoting *Kot v. Richard P. Rita &c., Inc.*, 134 Ga. App. 438 (214 SE2d 690) (1975)). The record is replete with evidence that plaintiff affirmed the contract in question. Moreover, a review of that contract reveals that it contained a provision reciting that it was the full agreement between the parties. For these reasons, the trial court properly refused to instruct the jury on fraud.

We find plaintiff's enumeration of error that the trial court erred in failing to give the jury his requested charge on torts to be without

merit. The only two torts presented in this case were fraud and wrongful repossession. For the reasons we have discussed above, the trial judge properly refused to charge the jury on both those torts. There being no tort claims that could properly be submitted to the jury, the trial court correctly refused to give plaintiff's requested charge on torts.

5. Finally, we address plaintiff's contention that the verdict rendered below is contrary to the law and is an illegal verdict. Plaintiff asserts that the verdict rendered by the jury is contrary to the law because plaintiff was not given credit for the value of the repossessed collateral. In this case, defendant repossessed the automobile in September of 1989. The vehicle was not sold until after defendant prevailed at trial, which was approximately a year later. As this court noted in *ITT Terryphone Corp. v. Modems Plus*, 171 Ga. App. 710, 711-712 (320 SE2d 784) (1984), " '[o]nce default has occurred, the creditor is authorized to take or retain possession of the collateral. (OCGA § 11-9-503.) He may then proceed to reduce his claim to judgment, to foreclose on the goods, to dispose of the collateral in a commercially reasonable manner, or to retain the goods in satisfaction of the debt. (OCGA §§ 11-9-501; 11-9-503; 11-9-504; 11-9-505.) *Nothing in the Code prohibits the creditor in possession of the goods from proceeding in a judicial action on the note.* The remedies are cumulative and the creditor is not required to reduce himself to the position of an unsecured creditor so long as he acts in a commercially reasonable manner and does not, by his actions or omissions, further impair the position of the debtor.' " A creditor, however, cannot deprive the debtor of possession of the collateral for an unreasonable length of time and not reduce the debt owed by the reasonable value of the collateral at the time of repossession. " 'Once a creditor has *possession* he must act in a *commercially reasonable manner* toward sale, lease, proposed retention, where permissible, or other disposition . . . If such disposition is not feasible, the asset must be returned, still subject, of course, to the creditor's security interest. *To the extent the creditor's inaction results in injury to the debtor, the debtor has a right of recovery.*' " Id. at 712 (quoting *Henderson Few & Co. v. Rollins Communications*, 148 Ga. App. 139, 141 (250 SE2d 830) (1978)).

Although defendant is correct in its assertion that it did not have to dispose of the collateral before pursuing judicial action on the note, defendant's failure to dispose of the collateral and seek a deficiency judgment did not change the burden of proof that defendant had to meet before it could prevail on its counterclaim. "The secured party must . . . prove the value of the collateral at the time of repossession and that the value of the goods does not equal the value of the debt. If this proof is not forthcoming, it is presumed that the value of the

goods is equal to the amount of the debt." *Richard v. Fulton Nat. Bank*, 158 Ga. App. 595, 596 (281 SE2d 338) (1981). Accord *Farmers Bank &c. v. Hubbard*, 247 Ga. 431, 435 (276 SE2d 622) (1981). The only evidence presented at trial concerning the value of the vehicle was evidence presented by defendant concerning the value of the vehicle at the time of trial. It is a matter of common knowledge that generally a vehicle depreciates in value each year. As this court found in *Richard*, absent evidence of the value of collateral at the time of repossession, the value of the goods is presumed to be equal to the debt owed. Thus, defendant did not meet its burden of proof in order to prevail on its counterclaim.

Furthermore, neither party requested a charge concerning the commercial reasonableness of defendant's conduct or that defendant could not recover more than the debt owed to it, and therefore, defendant's recovery would have to be offset by the value of the collateral at the time of repossession. For both these reasons, the verdict of the jury is improper and the judgment rendered on that verdict cannot stand. This case is remanded to the trial court for a determination of the commercial reasonableness of the sale of the vehicle and the value of the vehicle at the time of repossession.

*Judgment reversed and case remanded. Birdsong, P. J., and Cooper, J., concur.*

DECIDED JUNE 25, 1991.

*S. Robert Hahn, Jr.*, for appellant.
*Timothy W. Hewett*, for appellee.