## A94A1860. MEDLEY v. BOOMERSHINE PONTIAC-GMC TRUCK, INC.
### (449 SE2d 128)

BIRDSONG, Presiding Judge.

Carwyn L. Medley appeals the order of the trial court granting partial summary judgment in favor of appellee Boomershine Pontiac-GMC Truck, Inc. (Boomershine).

Appellant Medley purchased a Grand Am automobile from appellee Boomershine; appellee admits this fact in its brief. Throughout the sales transaction, appellant dealt with Bobby Billings, a salesman employed by Boomershine. Appellant testified, without contradiction by non-hearsay evidence, that in exchange for appellant's trade-in vehicle (a Ford Escort) and a cash down payment of $1,000, Billings stated that appellant would qualify for financing to purchase a certain Boomershine demonstrator car; based on these representations, appellant bought the car. The demonstrator car, however, subsequently was discovered to have been a program rental vehicle — a car previously owned and used as a fleet car by a car rental agency. Appellant tendered two checks of $500 each as down payment on the Boomershine car; he was taken by Billings to a finance company and his loan papers were processed. Appellant left his keys, vehicle registration and trade-in vehicle with Billings on the Boomershine premises; when he took possession of the program rental vehicle he still believed it to be a demonstrator. Billings signed and tendered appellant receipts for the two $500 checks. These receipts did not bear any form of logo or otherwise identify Boomershine; rather, they had the words "Rent Of" scratched through after the word "For," so as to assert the two checks had been received for "Auto Down pmt" and "Deposit . . . Vehicle Purchase," respectively. Subsequently appellant, upon making an inquiry of a Boomershine manager, learned he had been credited by Boomershine with only $800 of the $1,000 down payment. It was later determined that Billings had tendered to Boomershine an offer of purchase and bill of sale bearing appellant's forged signature. The documents reflected, inter alia, a certain sales price for the program rental vehicle; they did not reveal that any trade-in was being received, and recorded only an $800 down payment as having been tendered and accepted. Thereafter Billings' supervisor terminated the latter's employment, citing the following reason in the separation notice: "Failure to comply with company procedures, e.g. took unauthorized hold check and *did not disclose trade-in from customer to dealership*." (Emphasis supplied.) Neither appellant nor Boomershine

paid the installments due on the trade-in vehicle; Boomershine consistently maintained that the vehicle merely had been given to Billings on a side deal to see if he could sell it for appellant. The trade-in vehicle ultimately was repossessed by the lending company.

Appellant brought suit against Boomershine asserting claims for breach of contract, fraud, conversion, violations of the Georgia Fair Business Practices Act (FBPA) of 1975 (OCGA § 10-1-390 et seq.), punitive damages, attorney fees and litigation expenses. Boomershine filed a motion for partial summary judgment which was granted as to Counts 2 and 3 (fraud and conversion), Count 4 (FBPA), punitive damages, attorney fees and litigation expenses. *Held*:

1. The appropriate summary judgment standard is that of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). On appeal we cannot consider facts asserted in briefs which are not supported by the record. *Behar v. Aero Med Intl.*, 185 Ga. App. 845, 846 (1) (366 SE2d 223). Further, evidentiary rules as to admissibility of evidence are applicable in summary judgment proceedings; therefore, hearsay evidence is without probative value and cannot be considered unless it is part of the res gestae. *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 65 (397 SE2d 576).

2. The trial court did not err in granting summary judgment as to appellant's claim that Boomershine violated the FBPA. "[E]ven though a single instance of an unfair or deceptive act can be a sufficient basis for a claim under the FBPA, that act does not apply to suits based upon deceptive practices which occur in transactions that are essentially private. In other words, unless it can be said that the defendant's actions had or has potential harm for the consumer public the act or practice cannot be said to have impact on the consumer marketplace and any act or practice which is outside that context, no matter how unfair or deceptive, is not directly regulated by the FBPA." (Citations and punctuation omitted.) *Borden v. Pope Jeep Eagle*, 200 Ga. App. 176, 178 (1) (407 SE2d 128). Appellant asserts in his reply brief that Boomershine engaged in certain advertising that its cars were not program rental cars and contends that this act, coupled with the acts of Billings, would have potential harm on the consumer public. Appellant however has failed to cite any place in the record where evidence of such advertising exists; our review of the record discloses no evidence of this advertising. We will not accept mere assertions of fact in briefs (*Behar*, supra), or cull the record in search of error. *Manderson & Assoc. v. Gore*, 193 Ga. App. 723, 73 (8) (389 SE2d 251). Moreover, we review the grant of summary judgment by the trial court in light of the record as it existed at the time of the court's ruling and not on the basis of how the record appears after supplementation or amendment. See *Coker v. Culter*, 208 Ga. App. 651, 652 (431 SE2d 443); *Nowell v. Fain*, 174 Ga. App. 592, 59

(330 SE2d 741).

3. The trial court did not err in holding that the acts of Billings, with regard to Count 2 (conversion) and Count 3 (fraud) were personal to him and outside the scope of his employment. Compare *Wittig v. Spa Lady of Marietta*, 182 Ga. App. 689 (356 SE2d 665). As a general rule, "[w]here the tort of the employee is wholly personal to himself, it is not within the scope of his employment, and the master is not liable." Id. at 690. However, under certain circumstances, an employer can ratify the tortious conduct of an employee, even though it falls outside the scope of employment, and become liable therefor.

4. "[T]he mere fact that a tortious act of an employee amounts to a crime does not, per se, relieve his employer from liability. The test of liability is the same as in cases where a non-criminal act is involved; the act must have been one authorized by the employer prior to its commission, ratified after its commission, or committed within the scope of the employment." *Sexton Bros. Tire Co. v. Southern Burglar Alarm Co.*, 153 Ga. App. 413, 414 (265 SE2d 335). "Where the principal ratifies the tort of the agent after its commission, the liability of the principal is the same as if he had commanded it, provided the ratification is had with full knowledge on the part of the principal of the manner in which the tort was committed." *Stinespring v. Fields*, 139 Ga. App. 715, 717 (1) (229 SE2d 495).

"A principal may by ratification *or* by failure to repudiate acts of his alleged agent become bound." (Emphasis supplied.) *Klingbeil v. Renbaum*, 146 Ga. App. 591, 592 (1) (246 SE2d 698); *Wielgorecki v. White*, 133 Ga. App. 834, 838 (1) (212 SE2d 480); see OCGA § 10-6-1. But, "[a]n act can not be subject to ratification unless done in behalf of the person adopting it and attempting to ratify it." *Lemmons v. City of Decatur*, 215 Ga. 647, 648 (112 SE2d 597). Thus, where an employee is acting exclusively for himself *and* is not acting at all for the employer, *and* does not profess to be acting for the employer, there is no such thing as a master assuming by ratification liability for the personal act of his employee. See *Parry v. Davison-Paxon Co.*, 87 Ga. App. 51, 56 (2) (73 SE2d 59). " ' "There can . . . be no ratification unless the act was done for the master, or at least purported to be done for him." ' " Id. In this case, although Billings was acting on his own personal venture primarily for his own personal gain, so as to be outside the scope of his employment within the meaning of *Wittig*, supra, he unequivocally was purporting at all times to be acting in behalf of Boomershine in the sale of the car. Further, Boomershine received some benefit from Billings' sale of their program rental vehicle. Thus, the personal acts of Billings inextricably resulted in and were intended by him tangentially to benefit Boomershine as well. In these circumstances it cannot be held, as a matter of law, that Billings' tortious acts were of a type immune from ratification.

Ratification can be express or implied from the acts or silence of the principal. OCGA § 10-6-52. Whether ratification occurred is usually a question for the jury (*Wielgorecki,* supra at 838) "and not a question of law for the court." *Coursey v. Consolidated Naval Stores Co.,* 22 Ga. App. 538 (3) (96 SE 397) and cases cited therein.

Construing the evidence and all reasonable inferences and conclusions in favor of the non-movant appellant, as we are required to do (*Moore v. Goldome Credit Corp.,* 187 Ga. App. 594, 596 (370 SE2d 843)), we find that a genuine issue of material fact exists whether Boomershine ratified Billings' tortious conduct. For example, the record reveals that Boomershine did not refund the $200 taken from Medley's down payment by its agent and continues to assert by way of pleadings the viability of the terms contained in the forged offer of purchase and bill of sale. Although the general manager of Boomershine testified by way of deposition that he immediately offered to refund $200 to appellant because it "was apparent" that Billings had taken $1,000 of appellant's money and Boomershine had only received $800, appellant's alleged declination of this offer is disputed. Appellant, when deposed, testified the general manager said "he was going to try to reimburse me my two hundred dollars. That's the last I heard of that topic." While it was beyond the scope of employment for the agent to engage in fraud or conversion as averred, a genuine issue of material fact exists whether it was within the scope of employment and authority of the agent to collect down payments on Boomershine vehicles and to tender all or part of that down payment to its employer Boomershine. Further, the record is uncontroverted that Boomershine did receive from its agent the sum of $800; a genuine issue of material fact also exists whether this $800 was a part of a $1,000 down payment and whether the $800 was retained for Boomershine's use or benefit for any material period and in ratification of its agent's conduct after it became aware of the nature of its agent's activities. "Where a corporation knowing all of the facts accepts and uses the proceeds of an unauthorized contract executed in its behalf without authority, the corporation may be bound because of ratification." *Western American Life Ins. Co. v. Hicks,* 135 Ga. App. 90, 91 (3) (217 SE2d 323). "An unauthorized act or transaction by an agent in excess of his authority becomes binding and obligatory upon his principal, if the latter, with knowledge of the facts, receives and retains the benefit [in whole or in part] thereof, since such acceptance of the benefit amounts to an implied ratification of such act, whether the principal intends thereby to ratify it or not." *Kelley v. Carolina Life Ins. Co.,* 48 Ga. App. 106 (1) (171 SE 847). "While ratification of an unauthorized act of an agent is not to be presumed, the acts of a principal are to be liberally construed in favor of an adoption of the acts of the agent, and when the unauthorized act of the agent is done

in the execution of power conferred, but in excess or misuse thereof, a presumption of ratification readily arises from slight acts of confirmation, or from mere silence or acquiescence, or where the principal receives and holds the fruits of the agent's act." Id. at 107 (3). Boomershine's conduct gives rise to a jury question as to their ratification of Billings' tortious acts. The trial court erred in granting summary judgment as to Count 2 (conversion) and Count 3 (fraud).

5. The trial court predicated its grant of summary judgment as to appellant's claims for punitive damages, attorney fees and litigation expenses on its finding that there had been no tort of conversion or fraud committed by Boomershine and that Boomershine had never ratified the improper conduct by Billings. In view of our holding that a genuine issue of material fact exists as to Boomershine's ratification of the intentionally tortious conduct of Billings, we find that the trial court erred in granting summary judgment in favor of Boomershine as to appellant's claims for punitive damages (see *Rustin Oldsmobile v. Kendricks,* 123 Ga. App. 679 (3) (182 SE2d 178)) and attorney fees and litigation expenses. See *Wisenbaker v. Warren,* 196 Ga. App. 551, 552 (2) (396 SE2d 528).

*Judgment affirmed in part and reversed in part. Pope, C. J., and Ruffin, J., concur. Blackburn, J., disqualified.*

DECIDED SEPTEMBER 13, 1994 —
RECONSIDERATION DENIED OCTOBER 6, 1994 —

*Lynch & Powell, Gene E. Massafra,* for appellant.
*Swift, Currie, McGhee & Hiers, Jonathan M. Engram, Dennis A. Brown,* for appellee.