A04A2341. MARRALE v. GWINNETT PLACE FORD.
(609 SE2d 659)

BARNES, Judge.

William Marrale appeals the grant of summary judgment to Gwinnett Place Ford on his claims of fraud and violation of the Fair Business Practices Act ("FBPA") arising from his purchase of a used automobile.

1. In this State,

[t]he standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When a trial court rules on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. On appeal of the grant or denial of a motion for summary judgment, this court conducts a de novo review of

the law and the evidence.

*Overton Apparel v. Russell Corp.*, 264 Ga. App. 306, 307 (1) (590 SE2d 260) (2003).

Construing the evidence with all inferences and conclusions therefrom most favorably toward Marrale as the party opposing the motion for summary judgment, the record shows that Marrale purchased the automobile from Gwinnett Place Ford at a tent sale. The salesman who sold him the car said that it had never been in an accident and was a cream puff. After examining the car and finding no obvious defects, Marrale took the car for a test drive. He then purchased the car "as is," except that the salesman wrote down on the "as is form" "balance of factory warranty." Sometime later, after taking the car in for repairs to the car's front end, Marrale was informed that there would be no factory warranty on the car because it had been in a collision before he bought it.

When this dispute could not be resolved between the parties, Marrale filed a complaint against Gwinnett Place Ford alleging causes of action for violation of the FBPA and common law fraud. Marrale's complaint alleged that he purchased the used car from Gwinnett Place Ford after its agent falsely represented to him, with the intent to deceive, that the car had not been in an accident and was still under manufacturer's warranty. Marrale further alleged that he had reasonably relied upon the salesman's representations and if he had known that these representations were false, he would not have purchased the car.

After filing an answer denying liability, Gwinnett Place Ford moved for summary judgment contending that a merger clause in the sales contract barred the fraud claim and that the FBPA did not apply to the sale of this car because it was a private transaction. The affidavits submitted in support of the motion denied knowledge that the car had been in a collision, but did not deny that the salesman made the representation about the car's condition. Instead, Gwinnett Place Ford contended that the salesman did not misrepresent the condition of the car because he did not know the car had been in an accident. Subsequently, the trial court granted this motion, and this appeal followed.

2. The necessary elements of a fraud claim are "that the misrepresentation or falsehood was knowingly made, that it related to a material fact, that its purpose was to deceive another and induce him to act, that he did act upon it and that he was injured as a result." *Day v. Randolph*, 159 Ga. App. 474, 475 (283 SE2d 687) (1981). Pretermitting whether Marrale could establish these elements, this case is controlled by our decision in *Owens v. Union City Chrysler-Plymouth*, 210 Ga. App. 378 (436 SE2d 94) (1993). " 'The presence of a merger

clause in the underlying contract is determinative if the defrauded party has not rescinded but has elected to affirm the contract.' (Punctuation omitted.) *Nexus Services v. Manning Tronics*, 201 Ga. App. 255 (410 SE2d 810) (1991)." Id. at 379.

Marrale's contract with Gwinnett Place Ford contains such a clause, and, although he alleges that he attempted to rescind the contract, this allegation is not supported by the record. The only evidence even suggesting that Marrale attempted rescission is a visit his wife made to Gwinnett Place Ford after she learned the car had been in an accident and Marrale's several phone calls attempting unsuccessfully to talk to a representative of Gwinnett Place Ford. In neither of these instances, however, does the record show that Marrale or his wife said anything indicating that they wished to repudiate the contract. Further, Marrale continued to use the car after learning that the car had been involved in the accident.

> Where a party who is entitled to rescind a contract on ground of fraud or false representations, and who has full knowledge of the material circumstances of the case, freely and advisedly does anything which amounts to a recognition of the transaction, or acts in a manner inconsistent with a repudiation of the contract, such conduct amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable in equity. If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise he can not avoid or rescind such contract.

(Citation and punctuation omitted.) *Owens v. Union City Chrysler-Plymouth*, supra, 210 Ga. App. at 380. Given his failure to attempt to rescind the contract and his continued use of the car with knowledge that it had been in a collision, Marrale's reliance on *Crews v. Cisco Bros. Ford-Mercury*, 201 Ga. App. 589 (411 SE2d 518) (1991), is misplaced. *Crews v. Cisco Bros.* focuses on whether buyers were required to tender or return the benefits received under the contract to effect a rescission, and not whether the buyers sought sufficiently to repudiate the contract. Indeed, *Crews v. Cisco Bros.* is silent on this point. Nevertheless, OCGA § 13-4-60 requires that a party seeking rescission "*promptly, upon discovery of the fraud*, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value." (Emphasis supplied.) Although in most cases a jury question is presented on whether a buyer acted promptly to rescind the contract, *Newton v. Burks*, 139 Ga. App. 617, 618 (3) (229 SE2d 94) (1976), the Code section requires some action to do so.

Here there was none. In fact, Marrale did not include a count for rescission in his complaint. As *Crews v. Cisco Bros.* holds, in proper circumstances the continued retention of the car might not be significant; here Marrale's continued use cannot be disregarded because he continued to use the car without seeking to repudiate the contract.

Marrale's contention that, regardless of whether he rescinded the contract, the merger clause in the contract would not bar his fraud claim is not supported by the record. The front of the contract states:

> The FRONT & BACK of this order comprise the entire agreement between Gwinnett Plance [sic] and buyer affecting this purchase and no other agreement, representation, or understanding of any nature concerning the same has been made or entered into between Gwinnett Place and buyer, and this order may not be rescinded or modified except in writing signed by Gwinnett Place and buyer. Buyer certifies that he or she has read, understands and agrees to all conditions on the front and back of this agreement.

The back page of the form then states:

> Any used motor vehicle sold to Purchaser by Dealer under this Order is sold at the time of delivery by Dealer *without any guarantee or warranty*, expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose, *as to its condition* or the condition of any part thereof except as may be otherwise specifically provided in writing on the face of this Order or in a separate writing furnished to Purchaser by Dealer. Language disclaiming implied warranties of merchantability or fitness for a particular purpose on the vehicle subject to this Order does not apply when a service contract is sold within 90 days of the vehicle's date of sale in which the Dealer is legally liable under the service contract.

(Emphasis supplied.) As these clauses exclude representations about the condition of the vehicle, the trial court did not err by granting summary judgment on Marrale's fraud claim.

3. A different result is required, however, on Marrale's FBPA claim. The Georgia

> Fair Business Practices Act is intended to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce. The FBPA forbids and declares unlawful any unfair or deceptive acts or

practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce. The stated intent of the FBPA is to protect the public from acts and practices which are injurious to consumers, not to provide an additional remedy for private wrongs which do not and could not affect the consuming public generally. Thus, the scope of the FBPA is limited to acts in the conduct of consumer transactions and consumer acts or practices in trade or commerce. Our code defines a "consumer transaction" as the sale, purchase, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes, defines "consumer acts or practices" as acts or practices intended to encourage consumer transactions, and defines "trade" and "commerce" as the advertising, distribution, sale, lease, or offering for distribution, sale, or lease of any goods, services, or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever situate and shall include any trade or commerce directly or indirectly affecting the people of the state. The FBPA, however, does not provide a remedy for actions that do not and could not affect the general consuming public. . . . Consequently, suits brought under the FBPA must serve the public interest and implement the purpose of the FBPA — the end to unfair or deceptive acts or practices in the public consumer marketplace.

(Citation and punctuation omitted.) *Henderson v. Gandy*, 270 Ga. App. 827, 828 (4) (608 SE2d 248) (2004). A suit brought under the FBPA "must serve the public interest and implement the purpose of the FBPA — the end to unfair or deceptive acts or practices in the public consumer marketplace," *Zeeman v. Black*, 156 Ga. App. 82, 84 (273 SE2d 910) (1980), and to come within the FBPA the deceptive activity must take place in the context of the consumer marketplace. *Catrett v. Landmark Dodge*, 253 Ga. App. 639, 642 (2) (560 SE2d 101) (2002). Consequently, the trial court properly first considered whether Marrale's claim arose in the conduct of a consumer transaction and consumer acts or practices, *Larson v. Tandy Corp.*, 187 Ga. App. 893, 896 (4) (371 SE2d 663) (1988), and, as the issue was not raised below, we do not address whether Marrale could otherwise prove a claim under the FBPA.

One may bring a private suit under the FBPA only if he is individually injured by the breach of a duty owed to the consuming public in general. [The FBPA] does not encompass suits based upon allegedly deceptive or unfair acts or

practices which occur in an essentially private transaction. In those circumstances, even though the plaintiff may be a "consumer" with regard to the transaction, if the deceptive or unfair act or practice had or has no potential for harm to the general consuming public, the allegedly wrongful act of the defendant was not made in the context of the consumer marketplace. Unless it can be said that the defendant's actions had or has potential harm for the consumer public the act or practice cannot be said to have "impact" on the consumer marketplace and any act or practice which is outside that context, no matter how unfair or deceptive, is not directly regulated by the FBPA. When a "consumer" suffers damage as the result of an unfair or deceptive act or practice which had or has potential impact solely upon him and which is not and could not be a source of damage to any other member of the consuming public, there is no public interest to be served by proceeding under the FBPA, and the aggrieved party is relegated to pursuit of relief under other statutory or common law principles.

(Citation and punctuation omitted.) *Zeeman v. Black*, supra, 156 Ga. App. at 84-85. To be subject to a FBPA claim, Gwinnett Place Ford must have committed "some volitional act to avail [itself] of the channels of consumer conduct." Id. at 83. Clearly, offering a product for sale by opening one's door to the general public triggers the prohibitions of the FBPA if a deceptive act or practice is involved. *Catrett v. Landmark Dodge*, supra, 253 Ga. App. at 642 (2); *Billy Cain Ford Lincoln Mercury v. Kaminski*, 230 Ga. App. 598, 602 (3) (496 SE2d 521) (1998); *Regency Nissan v. Taylor*, 194 Ga. App. 645, 646-647 (2) (391 SE2d 467) (1990).

Further, *Zeeman v. Black*, supra, 156 Ga. App. at 85, holds that when

analyzing whether a defendant's allegedly wrongful activities are in violation of the FBPA to protect the public or an "isolated" incident not covered under the statute, "two factors are determinative: (a) the medium through which the act or practice is introduced into the stream of commerce; and (b) the market on which the act or practice is reasonably intended to impact. It is only when the application of both those factors indicates that the act or practice occurred within the context of the consumer marketplace that the fairness or deceptiveness of the act or practice need be examined."

(Punctuation omitted.) The record in this case shows that Gwinnett Place Ford is a business engaged in selling both new and used vehicles to the public, and that in furtherance of this business it conducted a tent sale to sell vehicles to the general public. Therefore, the sale of the car to Marrale was a transaction within the consumer marketplace.

The question then arises whether the statement by the salesman that Marrale complains of — that the car had never been in an accident — was an action within the consumer marketplace, or whether, as Gwinnett Place Ford alleges, it was a private transaction between the salesman and Marrale. In this context, we note that Gwinnett Place Ford does not dispute that Marrale went to the dealership's tent sale, expressed interest in the car and received false information about the car's condition. Gwinnett Place Ford's defense is that the salesman's representation was not false because he did not know at the time of his statement that the car had been in an accident and that this was a private transaction between the salesman and Marrale. See *Medley v. Boomershine Pontiac-GMC Truck*, 214 Ga. App. 795 (449 SE2d 128) (1994).

Gwinnett Place Ford's argument that Marrale cannot bring a FBPA claim because the salesman's misrepresentation was not made with the intent to defraud is without merit. *Miles Rich Chrysler-Plymouth v. Mass*, 201 Ga. App. 693, 697 (3) (a) (411 SE2d 901) (1991) (physical precedent only). Establishing an unfair or deceptive act or practice under the FBPA does not require proof of intentional conduct. "[T]he words 'volitional' and 'intentional' are not synonymous." *Regency Nissan v. Taylor*, supra, 194 Ga. App. at 646 (2). Moreover, even if the salesman did not know whether the car had been in a wreck, he certainly knew that he did not know the real condition of the car. Therefore, the salesman's misrepresentation could constitute fraud under OCGA § 51-6-2 (b).

We also find that Gwinnett Place Ford's reliance on *Medley v. Boomershine Pontiac-GMC Truck*, supra, 214 Ga. App. 795, is unwarranted. *Medley v. Boomershine* was an exceptional case in which the salesman, seemingly acting for himself, not only defrauded the seller, but also defrauded Boomershine. Additionally, Boomershine fired the salesman after learning of his misconduct. Id. at 795-796. Thus, *Medley v. Boomershine* provides a unique situation and does not stand for the general proposition that whenever a salesman makes a representation to a customer in furtherance of a sale that this action constitutes a private transaction between the salesman and the customer.

This court considered a similar argument relying on *Medley v. Boomershine* in *Catrett v. Landmark Dodge*, supra, 253 Ga. App. 639, in which a salesman misrepresented a truck as a demonstrator that

had been on the lot for some time when the truck was actually a used vehicle and refused "to characterize this transaction as private or outside the consumer marketplace." Id. at 643 (2). See also *Campbell v. Beak*, 256 Ga. App. 493, 494-496 (1) (568 SE2d 801) (2002), in which this court found that a series of private sales to the public of cars through newspaper advertisements fell within the FBPA, and *Billy Cain Ford Lincoln Mercury v. Kaminski*, supra, 230 Ga. App. at 602, in which we found that the dealer's conduct in selling a GMC truck as a Chevrolet truck was sufficient to present a claim under the FBPA.

Although the affidavit from Gwinnett Place Ford's sales manager states that this was a private transaction that did not involve advertisement to the general public, the record shows that this was a car offered for sale by Gwinnett Place Ford at its place of business and the misrepresentation was made by one of its salesmen in the course of his employment as part of Gwinnett Place Ford's routine business of selling cars. Under these circumstances, we find that the lack of public advertisement for this particular car is not significant. Further, because misrepresentations of this nature can harm the general consuming public, we find that this was not a private transaction as Gwinnett Place Ford contends.

Further, the law on this issue is well settled. *Borden v. Pope Jeep-Eagle*, 200 Ga. App. 176, 178 (1) (407 SE2d 128) (1991). If the public consumer interest would be served, one instance of an unfair or deceptive act or practice is a sufficient basis for a claim under the FBPA. *Crown Ford v. Crawford*, 221 Ga. App. 881, 883 (1) (473 SE2d 554) (1996); *Zeeman v. Black*, supra, 156 Ga. App. at 86.

Accordingly, as the trial court erred by granting summary judgment to Gwinnett Place Ford on Marrale's FBPA claim, the grant of summary judgment must be reversed and the case remanded to the trial court for further proceedings.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Mikell, J., concur.*

DECIDED JANUARY 20, 2005.

*Krohn & Moss, Amy M. Budow, Shireen Hormozdi*, for appellant. *C. Davis Bauman*, for appellee.