A99A1042. RAINS v. DOLPHIN MORTGAGE CORPORATION.
(525 SE2d 370)

PHIPPS, Judge.

Glenda Rains sued her sister, April Marie Roberson, Tommy McEarchern, Dolphin Mortgage Corporation, and others alleging forgery, fraud, and violation of the Georgia Racketeer Influenced & Corrupt Organizations Act and seeking punitive damages. The trial court granted Dolphin's motion for summary judgment, finding that (1) the corporation was not liable for McEarchern's acts because he was not an actual or apparent agent, (2) Dolphin did not ratify McEarchern's actions, and (3) forgery was outside the scope of any employment or agency relationship between Dolphin and McEarchern. Rains appeals from that order and contends that there are genuine issues of material fact regarding all of the trial court's findings. We agree that issues of material fact remain for the jury's consideration, and therefore, we reverse.

Rains and Roberson each inherited from their father a one-half interest in certain residential property. Roberson, as executrix of their father's estate, conveyed the property to Rains and herself by Executor's Deed. Rains and Roberson discussed selling the property, but Rains did nothing to effect a sale.

In December 1996, Rains received a telephone call from McEarchern, who claimed that he worked for Dolphin. McEarchern told Rains that her father's former property was to be sold and that she needed to sign a quitclaim deed. Several days later, McEarchern

called again, identified himself as being affiliated with Dolphin, and informed Rains that the house would be sold with or without her signature. Rains responded that she was not signing anything until she had a chance to speak with her attorney.

Later Rains read in the newspaper that the property had been sold. After hiring an attorney, Rains discovered that her name had been forged to a quitclaim deed, which conveyed her one-half interest in the property to Roberson. Roberson then conveyed the property to Robert and Tina Marshall, who knew nothing about the forged document.

At deposition, McEarchern testified that he had been employed by Dolphin for six months as an agent or loan originator and had closed ten to twenty loans for them. He testified that he had received on-the-job training from Lupita McCarthy, the manager of Dolphin's Atlanta office, on how to complete the loan documents and that he had assisted people in filling out the forms. He insisted that he had not forged Rains's name to the quitclaim deed.

In response to Dolphin's motion for summary judgment, Rains submitted an affidavit from McEarchern. In his affidavit, McEarchern swore that he had been employed by Dolphin as a loan originator, that he had received commissions from Dolphin, and that McCarthy had given him a Dolphin business card to use as a model for having his own printed. He also admitted that he had forged Rains's name to the quitclaim deed but stated that McCarthy had told him to sign it to close the loan and that Dolphin would take care of it. McEarchern stated that McCarthy had told him how to testify at his deposition and had specifically instructed him to deny signing the quitclaim deed.

Initially McCarthy testified at deposition that Dolphin had never compensated McEarchern for referring loan applicants but later acknowledged that Dolphin did pay him on three or four occasions. McCarthy knew that McEarchern had been distributing business cards with his name and the Dolphin name and logo on them and testified that she had told him to stop. McCarthy said she and her assistant manager, Don Williams, had become concerned when they heard that McEarchern was telling people he worked for Dolphin and they had decided to have him sign a letter of resignation. The letter, which was prepared by Williams and signed by McEarchern, stated that McEarchern was resigning his employment as a loan officer for Dolphin.

Williams testified that McEarchern had been involved in approximately ten loans for Dolphin and that he had received some compensation for his work. Dolphin's vice president and its compliance manager testified at deposition that Dolphin had issued McEarchern five checks with the word "commission" written on them but contended

that they should have said "referral fee" instead.

We review the trial court's grant of summary judgment de novo to determine whether the evidence demonstrates any genuine issue of material fact.[1] To prevail, the moving party must demonstrate that there are no genuine issues of any material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, support judgment as a matter of law.[2] "A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case."[3]

1. Dolphin contends that McEarchern's affidavit must be construed against Rains because it contradicts his prior deposition testimony.

Where a party offers self-contradictory testimony in response to a motion for summary judgment, without reasonable explanation for the contradiction, the testimony must be construed against the party.[4] This rule also applies to testimony given on behalf of a party.[5]

McEarchern's affidavit contradicts his deposition testimony but also offers an explanation for the discrepancy — that McCarthy told him how to testify at his deposition and instructed him to deny signing the quitclaim deed. We find his explanation reasonable and, as a result, will not construe his affidavit against Rains.

2. Rains contends that there is sufficient evidence in the record to support a finding that McEarchern was an agent or employee of Dolphin.

To determine whether a person is an employee or an independent contractor, we examine whether the employer assumes the right to control the time, manner, and method of executing the work.[6] The right to control the time means the right to control the actual hours of work.[7] The right to control the manner and method means the right to tell the employee how to perform all details of the job, including the tools he should use and the procedures he should follow.[8]

Viewing the evidence in Rains's favor, we find no basis on which to conclude that McEarchern was an employee of Dolphin. There is no evidence that Dolphin had the right to control the hours McEar-

[1] *Howell v. Styles*, 221 Ga. App. 781, 784 (4) (472 SE2d 548) (1996).

[2] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[3] (Emphasis omitted.) Id.

[4] *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986).

[5] *Ford v. Dove*, 218 Ga. App. 828, 829 (1) (463 SE2d 351) (1995).

[6] *RBF Holding Co. v. Williamson*, 260 Ga. 526 (397 SE2d 440) (1990); *Neese v. Britt Home Furnishings*, 222 Ga. App. 292, 293 (2) (474 SE2d 44) (1996).

[7] Id.

[8] Id.

chern worked. The record does show that McEarchern received payments from Dolphin that were identified as commissions and that McCarthy and Williams, who Dolphin admits are employees, were compensated by commission. The record also shows that Dolphin employees instructed McEarchern to sign a letter of resignation, which they drafted. But those facts do not show that Dolphin had the right to control the way McEarchern performed his work. The only evidence that Dolphin had the right to control the time, manner, or method of McEarchern's work is that McCarthy provided him with training on how to prepare loan documents. Under the circumstances, we cannot conclude that a genuine issue of material fact exists on this issue.

3. Rains challenges the trial court's holding that McEarchern was not an apparent or ostensible agent of Dolphin.

To subject an alleged principal to liability under a theory of apparent or ostensible agency, a plaintiff must show, "(1) that the alleged principal held out another as its agent; (2) that the plaintiff justifiably relied on the care or skill of the alleged agent based upon the alleged principal's representation; and (3) that this justifiable reliance led to the injury."[9] Even if Dolphin held McEarchern out as its agent, there is no evidence that Rains justifiably relied on Dolphin's representations or that her reliance led to the harm caused by McEarchern.[10] We find that the trial court correctly granted summary judgment to Dolphin on this issue.

4. Rains contends that Dolphin ratified McEarchern's actions and therefore should be liable for them.

The relationship of principal and agent may be established if one person, expressly or by implication, ratifies the acts of another on his behalf.[11] Whether a ratification occurred is generally a question of fact for the jury.[12] Ratification may occur if a business entity accepts the benefits of an act done by another on its behalf, although that person had no actual or apparent authority to act for the business.[13] Even forgery by one purporting to act on behalf of another may be ratified.[14]

---

[9] *Kissun v. Humana, Inc.*, 267 Ga. 419, 420 (479 SE2d 751) (1997); *Richmond County Hosp. Auth. v. Brown*, 257 Ga. 507, 508-509 (361 SE2d 164) (1987).

[10] See *Frey v. Pepsico, Inc.*, 191 Ga. App. 585, 587 (1) (382 SE2d 648) (1989) (unless the appellants chose to be hit by one of the principal's trucks, there can be no reliance on the apparent agency relationship); cf. *Keefe v. Carpet & Upholstry Cleaning &c.*, 213 Ga. App. 439, 440 (1) (444 SE2d 857) (1994) (justifiable reliance shown where plaintiff relied on repeated and good advertising by defendant in hiring carpet cleaner).

[11] OCGA § 10-6-1.

[12] *Wielgorecki v. White*, 133 Ga. App. 834, 838 (1) (212 SE2d 480) (1975).

[13] *Got-It Hardware &c. v. City of Ashburn*, 155 Ga. App. 214, 215 (270 SE2d 380) (1980).

[14] *Southern Fed. Sav. &c. Assn. v. Firemen's Benevolent Assn.*, 72 Ga. App. 663, 666 (34 SE2d 674) (1945); see also *Medley v. Boomershine Pontiac-GMC Truck*, 214 Ga. App. 795,

We find sufficient evidence exists to create a genuine issue of material fact about whether McEarchern's actions were ratified. His actions were taken for Dolphin's benefit, and McCarthy acknowledged that she and Dolphin retained the benefits of those actions. There is evidence that Dolphin, through McCarthy (its admitted employee and the office manager), not only knew of but directed McEarchern's actions. Because we find these facts sufficient to create a jury question on whether McEarchern was an agent via ratification, we reverse the trial court's grant of summary judgment to Dolphin.

5. By granting Dolphin's motion for summary judgment in its entirety, the trial court also disposed of Rains's claim under the Georgia RICO Act and her claim for punitive damages. We find material issues of fact with respect to these claims also.

As to the RICO claim, Dolphin argues that there is no evidence of a pattern of racketeering activity. This argument is without merit. Under RICO, a pattern of racketeering activity requires at least two incidents of interrelated racketeering activity, i.e., predicate offenses.[15] Here, there is evidence that, pursuant to directions by McCarthy, McEarchern committed forgery in the first degree by signing Rains's name to the quitclaim deed and uttering or delivering it at closing[16] and perjury by giving false testimony at his deposition.[17]

As to Rains's claim for punitive damages, Dolphin argues that there has been no proof by clear and convincing evidence of fraud or other actionable misconduct so as to authorize imposition of punitive damages under OCGA § 51-12-5.1 (b). There is no merit in this argument. This is a jury question.[18]

*Judgment reversed. Pope, P. J., and Smith, J., concur.*

DECIDED NOVEMBER 16, 1999 —
RECONSIDERATION DENIED DECEMBER 20, 1999 — ▮▮▮

*Smith, Price & Wright, Sidney P. Wright*, for appellant.
*Brinson, Askew, Berry, Seigler, Richardson & Davis, J. Anderson Davis, James D. Blitch*, for appellee.

---

797-799 (4) (449 SE2d 128) (1994) (whether ratification of forgery occurred is question of fact where employee was acting outside the scope of his employment but for the benefit of his employer and employer retained benefits of his actions).

[15] OCGA § 16-14-3 (8), (9).
[16] OCGA § 16-14-3 (9) (A) (viii).
[17] OCGA § 16-14-3 (9) (A) (xv).
[18] See *Chicago Hardware &c. Co. v. Letterman*, 236 Ga. App. 21, 25 (3) (510 SE2d 875) (1999).