A03A0305. MULTI-MEDIA HOLDINGS, INC. v. PIEDMONT CENTER, 15 LLC.
(583 SE2d 262)

ANDREWS, Presiding Judge.

This is an appeal from a jury verdict for plaintiff Piedmont Center on its suit for money due under a lease agreement. The amount due was stipulated by the parties before trial, and the only issue at trial was whether Multi-Media Holdings was a party responsible for payment. For reasons that follow, we affirm.

When this Court reviews a jury verdict on appeal, we must take the evidence in the light most favorable to the verdict and affirm if there is any evidence to support it. *Duncan v. Moore*, 275 Ga. 656, 658 (571 SE2d 771) (2002). The jurors are the sole and exclusive judges of the weight and credit given the evidence, and this Court must construe the evidence with every inference and presumption in favor of upholding the verdict, even where the evidence is in conflict. *MARTA v. Green Intl.*, 235 Ga. App. 419, 420 (509 SE2d 674) (1998).

The evidence at trial was as follows. Pollack Levitt & Partners leased space at Piedmont Center under a lease agreement that required written permission from Piedmont Center before a tenant

could assign the lease to another party. James Pollack sent a letter to Piedmont stating that he was pursuing a merger with Multi-Media and asking permission to assign the lease to Multi-Media. A representative from Piedmont Center testified that after Pollack requested permission to assign the lease to Multi-Media, Piedmont Center investigated the company and decided to approve the assignment after it determined that Multi-Media would be a good tenant. Piedmont accepted the assignment by signing the letter in the space provided and returning it to Pollack.

The parties to the merger agreement entered into by Pollack Levitt were Multi-Media and its wholly owned subsidiary, MHI Atlanta. The agreement stated that "consent has been obtained" from Piedmont Center under the lease agreement. But, the agreement did not provide that Pollack Levitt would merge with Multi-Media; rather, it stated that the merger was with MHI Atlanta. It is undisputed that none of the parties informed Piedmont Center that Pollack Levitt was merging with MHI Atlanta instead of Multi-Media and none of the parties requested permission to assign the lease to MHI Atlanta.

MHI Atlanta paid rent for three months and then went out of business. Piedmont Center sued Multi-Media for the rent due, claiming that Pollack had authority to bind Multi-Media to the lease, that Multi-Media ratified Pollack's request for assignment of the lease, and that Multi-Media's business dealings with its subsidiaries warranted "piercing the corporate veil" and holding it liable for their debts. The jury returned a general verdict for Piedmont Center.

1. In its first enumeration of error, Multi-Media claims there was no evidence that it ever assumed the lease. It argues there was insufficient evidence that Pollack was its agent and was authorized to bind Multi-Media to the assignment of the lease.

OCGA § 10-6-1 provides: "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." "Whether a ratification occurred is generally a question of fact for the jury. Ratification may occur if a business entity accepts the benefits of an act done by another on its behalf, although that person had no actual or apparent authority to act for the business." (Footnote omitted.) *Rains v. Dolphin Mtg. Corp.*, 241 Ga. App. 611, 614 (525 SE2d 370) (1999).

Here, there was evidence that Pollack was acting for Multi-Media when he requested permission to assign the lease. Ethan Assal, the chairman and chief executive officer of Multi-Media, testified that he knew Pollack was going to Piedmont Center on Multi-Media's behalf to obtain consent to assign the lease to Multi-Media.

There was also evidence that Multi-Media ratified the assign-

ment of the lease. Multi-Media was a party to the merger agreement which stated that "consent has been obtained" from Piedmont Center under the lease agreement. Multi-Media never sought to change the assignment, despite the fact that the lease required it.

A presumption of ratification can arise "from slight acts of confirmation, or from mere silence or acquiescence, or where the principal receives and holds the fruits of the agent's act." (Punctuation omitted.) *Medley v. Boomershine Pontiac-GMC Truck*, 214 Ga. App. 795, 799 (449 SE2d 128) (1994). Here, the evidence was that Multi-Media knew the lease was assigned to them, acquiesced to the assignment, and received the benefits of the assignment. See id. Under the any evidence standard, this was sufficient evidence to send this issue to the jury.

2. Piedmont Center also presented evidence of Multi-Media's liability under a "piercing the corporate veil" theory. Multi-Media does not argue on appeal that the evidence was insufficient on this issue under Georgia law; rather, it contends that the court should have charged the jury on the applicable standard under Delaware law. Multi-Media claims that the Restatement (Second) Conflict of Laws requires the court to apply the law of the state of incorporation to piercing the veil claims. Multi-Media argues that Delaware law, unlike Georgia law, requires a showing of fraud in order to pierce the corporate veil and there was no evidence of fraud in this case.

Under Georgia law, courts may pierce the corporate veil "to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or evade contractual or tort responsibility. The theory applies when there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist." (Punctuation omitted.) *Paul v. Destito*, 250 Ga. App. 631, 639 (550 SE2d 739) (2001).

Although Multi-Media argues that Delaware law requires a showing of fraud before a court may pierce the corporate veil, that is not clear. See, e.g., *Fletcher v. Atex, Inc.*, 68 F3d 1451, 1457-1460 (2nd Cir. 1995) (applying Delaware law and finding the two elements of "alter ego" liability for corporate debts are operation as a single economic entity and an " 'overall element of injustice or unfairness,' " and holding that under Delaware law, the alter ego theory of liability does not require any showing of fraud). See also *Outokumpu Engineering Enterprises v. Kvaerner EnviroPower*, 685 A2d 724, 729 (Del. Super. Ct. 1996) (corporate veil may be pierced in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable considerations are involved); *Geyer v. Ingersoll Publications Co.*, 621 A2d 784, 793 (Del. Ch. 1992) (to

pierce corporate veil of subsidiary plaintiff must show fraud *or* that the parent and the subsidiary operated as a single economic entity).

Accordingly, we are not convinced that the jury could not have found Multi-Media liable for the rent payments even if the court had charged on Delaware law. But, we need not determine that issue because, in this case, the trial court properly charged the jury under Georgia law.

In support of its argument on appeal, Multi-Media cites to *Realmark Investment Co. v. American Financial Corp.*, 171 BR 692 (N.D. Ga. 1994). In *Realmark*, the issue was whether a veil-piercing claim was the property of the debtor corporation itself, and if so, which state's law would apply. The court found that the Supreme Court of Georgia would follow the Restatement and would hold that the state of incorporation's law would apply to issues of piercing the corporate veil. Id. at 695. The court also relied on OCGA § 14-2-1505 (c) which provides that the Code "does not authorize this state to regulate the organization or internal affairs of a foreign corporation." Internal affairs are those that "concern[ ] the relations inter se of the corporation, its shareholders, directors, officers or agents." (Punctuation omitted.) *Diedrich v. Miller & Meier &c.*, 254 Ga. 734, 735 (334 SE2d 308) (1985).

First, we note that the Supreme Court of Georgia has recently reiterated that "the Restatement (Second) Conflict of Laws has never been adopted in Georgia" and "Georgia will continue to adhere to the traditional conflicts of law rules." *Convergys Corp. v. Keener*, 276 Ga. 808, 809, 812 (582 SE2d 84) (2003).[1] In addition, we conclude that *Realmark* is not applicable to the instant case because here the right of a third party external to the corporation is at issue and different conflicts principles apply. This is true even if we were to follow the Restatement. Comment g to § 302 provides:

> Nevertheless, it is in situations where the corporation has little contact with the state of its incorporation that the local law of some other state is most likely to be applied when (1) the relevant local law rules of the other state embody an important policy of that state and (2) the matter involved does not affect the corporation's organic structure or internal administration and therefore does not fall within the

---

[1] Under traditional choice of law rules, Georgia law is the applicable law, and Multi-Media does not argue otherwise. See, e.g., *Gen. Tel. Co. of the Southeast v. Trimm*, 252 Ga. 95 (311 SE2d 460) (1984) (under the traditional rule of lex loci contractus, actions sounding in contract "are to be governed as to their nature, validity, and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case, . . . the laws of that sister State will be applied") (punctuation omitted).

category of issues which, for reasons stated in Comment e, cannot practicably be determined differently in different states.

See also *First Nat. City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U. S. 611, 621 (103 SC 2591, 77 LE2d 46) (1983) (as a general matter, the law of the country of incorporation normally determines issues relating to the internal affairs of a corporation but different conflicts principles apply where the rights of third parties external to the corporation are at issue); *United States v. Clinical Leasing Svc.*, 982 F2d 900, 902, n. 5 (5th Cir. 1992) (citing Restatement (Second) Conflict of Laws § 306) (in determining whether to pierce the corporate veil, the court applied Louisiana law rather than that of the state of incorporation because Louisiana had a more significant relationship to the lawsuit); *Chrysler Corp. v. Ford Motor Co.*, 972 FSupp. 1097, 1098, 1102 (E.D. Mich. 1997) (Restatement did not mandate the law of the state of incorporation in this case, where the matter was not one of internal corporate governance but rather external liability, and where Michigan had a far more significant relationship to the events in question than did the state of incorporation).

Thus, under either the Restatement (Second) Conflict of Laws or traditional choice of law rules, we conclude that Georgia law applies. The trial court did not err in charging the jury accordingly.

3. Multi-Media also argued that the state court did not have jurisdiction to hear the piercing the corporate veil claim. We disagree. This was a claim for money damages due under a lease agreement, not a claim sounding in equity such that it must be brought in superior court. See, e.g., *Stone Mountain Pool Supply Co. v. Imperial Pool Co.*, 170 Ga. App. 283 (316 SE2d 769) (1984).

4. In its last enumeration of error, Multi-Media claims the trial court erred in refusing to give its requested charge that a debtor may prefer one creditor over another. This was not error. The only claim at trial was that Multi-Media was responsible for the rent due; therefore, this charge was not adjusted to the evidence.

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED JUNE 11, 2003.

*Greenberg Traurig, Michael J. King*, for appellant.

*Meadows, Ichter & Trigg, Cary Ichter, Matthew B. Ames*, for appellee.