A05A0586. THE GOVERNOR'S TOWNE CLUB, INC. et al.
v. CAFFREY CONSTRUCTION COMPANY.
(614 SE2d 892)

JOHNSON, Presiding Judge.

Caffrey Construction Company ("Caffrey Construction") sued The Governor's Towne Club, Inc. ("Towne Club"), The Governor's Towne Club Development, Inc. ("Towne Club Development"), and Kenneth G. Horton Development Corporation of Georgia, Inc. ("Horton Development") to collect payment for services rendered. The trial

court granted Caffrey Construction's motion for summary judgment, and ordered that judgment be entered against Towne Club and Towne Club Development in the principal amount of $119,750.72.[1] Towne Club and Towne Club Development appeal, and we reverse because material issues of fact remain for the jury.

"To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[2] Our review is de novo.[3]

So viewed, the evidence shows that between November 2002 and February 2003, Caffrey Construction cleared land on a golf course which was owned by Towne Club and associated with a residential subdivision developed by Towne Club Development. Caffrey Construction was apprised of the work in November 2002, when a foreman for Thompson Grading contacted a foreman for Caffrey Construction to set up a meeting at the golf course. Thompson Grading was a general contractor who had previously hired Caffrey Construction to perform clearing work on property owned by Towne Club Development.

The golf course meeting was attended by the Caffrey Construction foreman, the Thompson Grading foreman, the golf course superintendent, and Joe Horton, a vice president of Towne Club Development. The four discussed work on the golf course to be performed by Caffrey Construction, specifically burning and clearing a pile of debris and clearing approximately ten acres of land. They estimated the work would cost $40,000, although the Caffrey Construction foreman indicated that Caffrey Construction's charges would be based on an hourly rate.

After the meeting, Mark Caffrey, Caffrey Construction's principal officer, sent an e-mail to the Thompson Grading foreman in which he represented that Caffrey Construction would burn the pile of debris for a flat fee of $6,000, and that the other work would be based on an hourly rate for operators and equipment as indicated. According to Mark Caffrey, he sent the cost information to the Thompson Grading foreman to forward to Joe Horton at Joe Horton's request because Joe Horton was experiencing problems with his computer. Caffrey later discussed the work with Joe Horton, but they did not discuss the pricing for the work. Joe Horton then instructed the golf course superintendent to ask Caffrey Construction to begin work.

---

[1] Caffrey Construction did not move for summary judgment against Horton Development.

[2] (Footnote omitted.) *Smith v. Gordon*, 266 Ga. App. 814 (1) (598 SE2d 92) (2004). See OCGA § 9-11-56; *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[3] *Oasis Goodtime Emporium I v. Crossroads Consulting Group*, 255 Ga. App. 375, 376 (565 SE2d 573) (2002).

Caffrey Construction completed burning and clearing the debris pile and submitted an invoice for $6,000 for that work in November 2002, along with $2,770 in additional billings at an hourly rate. Joe Horton approved payment, and the bill was paid in January 2003 by a check listing the payor as "Governor's Club, Inc." Before receiving payment, an officer of Caffrey Construction signed a lien waiver stating that Caffrey Construction was employed by "Governor's Club, Inc." to perform work on property known as the Governor's Towne Club, and owned by "Governor's Club Development, Inc." The waiver was prepared by Jiten K. Patel, who processed construction contracts and invoices for Towne Club Development, and who deposed that "Governor's Club, Inc." was the name of Towne Club before it changed its name in July 2002.

After approving the first invoice, Joe Horton left employment with Towne Club Development, and Kenneth Horton, a principal of Towne Club and Towne Club Development, assumed responsibility for final approval of invoices connected with the golf course development. Caffrey Construction submitted a second invoice for work on the golf course through January 31, 2003. The second invoice, which computed various labor and equipment charges on an hourly basis, was billed to "Joe Horton Development, Governor's Club, Inc.," payable in 30 days, and in the amount of $39,141.68. Rather than approve payment, Kenneth Horton asked Patel to investigate the invoice. Caffrey Construction submitted two more invoices, dated February 20, 2003, and February 27, 2003, in the amounts of $60,300.34 and $20,308.70, respectively. After Towne Club and Towne Club Development refused to pay the three invoices, Caffrey Construction sued to collect.

1. Towne Club and Towne Club Development claim the trial court erred in finding that no genuine fact remains as to whether Towne Club and Towne Club Development contracted with Caffrey Construction. We agree.

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."[4] The meeting of the minds is said to be the first requirement of contract law, and "[i]f there is any essential term upon which agreement is lacking, no meeting of the minds of the parties exists, and a valid and binding contract has not been formed."[5]

---

[4] OCGA § 13-3-1.

[5] (Citations omitted.) *Auto-Owners Ins. Co. v. Crawford*, 240 Ga. App. 748, 750 (1) (525 SE2d 118) (1999).

Evidence shows that Caffrey Construction's hourly charges for work at the golf course, material terms of the purported contract, were not sent to Joe Horton but to the representative of a third party, Thompson Grading. The evidence does not affirmatively show when or even if this e-mail containing the pricing terms was delivered to Joe Horton. Patel testified that it was his understanding that the rates were "shared" by Thompson Grading with persons at Towne Club, but he did not know when they were shared. Kenneth Horton and Mark Caffrey both deposed that they were informed by a Thompson Grading representative that the pricing document was delivered to Joe Horton, but the Thompson Grading representative did not say when the document was delivered, and the statement is hearsay in both instances and cannot be considered for purposes of summary judgment.[6] Construing the evidence most favorably to Towne Club and Towne Club Development, we conclude that a material issue of fact remains as to whether Caffrey Construction, Towne Club, and Towne Club Development mutually assented to the terms of a contract for clearing the golf course land at the hourly rates proposed in the e-mail sent to Thompson Grading.[7]

2. Towne Club and Towne Club Development also claim the trial court erred in finding that they ratified the purported contract. We agree, because genuine issues of material fact remain as to whether Towne Club and Towne Club Development ratified a contract to pay for the clearing work at the golf course at the hourly rates claimed by Caffrey Construction.

Caffrey Construction contends that Towne Club and Towne Club Development ratified the terms of the contract because they allowed Caffrey Construction to continue working on the golf course after receiving the invoice dated January 31, 2003, which showed Caffrey Construction was charging an hourly rate for its work on the golf course and billing Towne Club for the work. "A presumption of ratification can arise from slight acts of confirmation, or from mere silence or acquiescence, or where the principal receives and holds the fruits of the agent's act."[8] However,

[a]ssuming that the corporation did receive the benefits of the plaintiff's alleged services, in order to prove ratification by the corporation he must prove that the principal, the

---

[6] See *Sherrill v. Stockel*, 252 Ga. App. 276, 278 (557 SE2d 8) (2001).

[7] See *Key Professional Systems v. Citicorp Indus. Credit*, 170 Ga. App. 94, 94-95 (1) (316 SE2d 495) (1984) (the movant in a motion for summary judgment is required conclusively to negate the existence of all material issues of fact).

[8] (Citation and punctuation omitted.) *Multi-Media Holdings v. Piedmont Center*, 262 Ga. App. 283, 285 (1) (583 SE2d 262) (2003).

governing body of the corporation or some official or agent who had authority to receive such notice had full knowledge of all material facts in connection with the transaction in question. And such knowledge must have been acquired by the principal otherwise than by the knowledge of the agent the ratification of whose acts is contended for.[9]

A jury issue remains as to whether Kenneth Horton or any other authorized officer of Towne Club or Towne Club Development had full knowledge of the material facts regarding Caffrey Construction's purported agreement to work on the golf course. Evidence shows that Kenneth Horton was not aware that Caffrey Construction was involved in the work at the golf course before he saw the January 31, 2003 invoice in February, at which time he ordered Patel to investigate the transaction. Although the invoice arguably did put Kenneth Horton on notice as to the rates charged by Caffrey Construction for the work at the golf course, the invoice listed the "contractor" as Thompson Grading, who had acted as a general contractor for Towne Club Development and had previously used Caffrey Construction as a subcontractor, and so the invoice suggested that Caffrey Construction may have been acting as Thompson Grading's subcontractor in working on the golf course. Based on the foregoing, a jury could conclude that Towne Club and Towne Club Development did not ratify the purported contract with Caffrey Construction by allowing it to continue working on the golf course while they investigated the January 31, 2003 invoice.[10]

Caffrey Construction further maintains that Towne Club and Towne Club Development ratified the purported contract by ordering Caffrey Construction to clear additional areas on the golf course not discussed in the fall 2002 meeting.[11] The evidence does show additional work at the golf course was authorized by Kenneth Horton and the architect, and the golf course superintendent then asked Caffrey Construction to perform the work. However, construed most favorably to Towne Club and Towne Club Development, the evidence does not demand a finding that Kenneth Horton authorized the additional work with the knowledge that it would be performed by Caffrey

---

[9] (Citations omitted.) *Dragon Corp. v. Syphers*, 85 Ga. App. 781, 784 (70 SE2d 105) (1952). Accord *Holy Fellowship Church &c. v. Brittain*, 240 Ga. App. 436, 438 (2) (523 SE2d 93) (1999).

[10] See *Johnson v. First Nat. Bank &c.*, 253 Ga. 233, 234 (1) (a) (319 SE2d 440) (1984) (to prove that her father ratified her acts by silence or implication, plaintiff was required to show that her father had knowledge of all material facts relating to the ratification, and that he did not, for an unreasonable time, object to her actions).

[11] See, e.g., *Biltmore Constr. Co. v. Tri-State Electrical Contractors*, 137 Ga. App. 504 (224 SE2d 487) (1976).

Construction. For instance, correspondence between the golf course superintendent and Patel indicates that the additional work had already been completed before Patel, at Kenneth Horton's direction, investigated the January 31, 2003 invoice. Based on the foregoing, we find material issues of fact remain as to whether Towne Club and Towne Club Development ratified the purported contract.

3. Towne Club and Towne Club Development further contend that the trial court erred in concluding that no genuine issue of fact remains as to the accuracy of the amounts billed and reasonableness of those charges. Again, we agree.

In an action to recover fees for services rendered, competent opinion evidence showing that hours expended and services charged are unreasonable may preclude summary judgment in favor of the plaintiff.[12] Here, evidence shows that Caffrey Construction charged for equipment transport and down time. Mark Caffrey admitted Caffrey Construction charged to move the grinding machine, which was consistently billed for 10.5 to 11 hours a day at $400 an hour. A worker deposed that when he was at the job site, the grinder would run "[a]bout every day. I mean we didn't run it all the time, you know, one day. We'd like grind a half a day, rest of the day work cleaning out wetlands with the backhoe." Although Caffrey Construction characterizes the testimony as referring to only one day the grinder was not used the entire day, we find the worker's testimony, if viewed in the light most favorable to Towne Club and Towne Club Development, indicates that it was the normal procedure to run the grinder for less than the entire work day.

Kenneth Horton averred that "[t]he industry standard practice, in my experience developing golf courses, is that when equipment is hired by the hour, it is for hours actually worked, and not for down time or transport time." Combined with the evidence showing the use and hourly charges associated with the grinding machine, we find Kenneth Horton's opinion to be competent evidence that Caffrey Construction's charges were unreasonable.[13] The trial court apparently disregarded this portion of Kenneth Horton's affidavit under authority of *Prophecy Corp. v. Charles Rossignol, Inc.*[14] because the trial court believed it contradicted Kenneth Horton's deposition testimony.[15] Caffrey Construction argued to the trial court that a

---

[12] See *Spears v. Allied Engineering Assoc.*, 186 Ga. App. 878 (1) (368 SE2d 818) (1988). Accord *Brygider v. Atkinson*, 192 Ga. App. 424, 426 (385 SE2d 95) (1989).

[13] See *Spears*, supra.

[14] 256 Ga. 27 (343 SE2d 680) (1986).

[15] See id. at 28-30 (1). See also *Conrad v. Conrad*, 278 Ga. 107, 109 (597 SE2d 369) (2004) (on motion for summary judgment, when a respondent offers self-contradictory testimony by the party-witness on an issue dispositive of the case, if the contradiction is not adequately

contradiction was shown in Kenneth Horton's deposition by his admitted lack of knowledge as to the appropriateness of the hourly rates charged by Caffrey Construction. However, Kenneth Horton's averred knowledge that equipment charges, in the context of golf course development, are by standard practice based on the hours the equipment is actually used is not contradictory with his lack of knowledge as to the appropriate hourly rate for the specific equipment used by Caffrey Construction. Accordingly, we conclude that material issues of fact remain for the jury as to the reasonableness of Caffrey Construction's charges.

*Judgment reversed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED MAY 13, 2005.

*Smith, Currie & Hancock, George D. Wenick, Maura F. Krause,* for appellants.

*Pursley, Lowery & Meeks, Roy H. Meeks, Jr.,* for appellee.

explained, the contradictory testimony must be construed against the respondent).