**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**April 2, 2018**

# In the Court of Appeals of Georgia

A18A0737. GEORGIA FARM BUREAU MUTUAL INSURANCE
COMPANY v. CLAXTON et al.

BETHEL, Judge.

Georgia Farm Bureau Mutual Insurance Company ("Georgia Farm Bureau") brings this interlocutory appeal from the trial court's denial of its motions for summary judgment in a declaratory judgment action it filed against Dena Claxton and Carl Lowery. Claxton and Lowery, both of whom hold insurance policies issued by Georgia Farm Bureau, were involved in a motor vehicle accident and sought coverage under their respective policies. Georgia Farm Bureau sought declaratory relief, claiming that there is no coverage available to Lowery and Claxton under their respective policies given the circumstances of the accident. Georgia Farm Bureau moved for summary judgment as to its coverage obligations on both claims, which

the trial court denied. For the reasons set forth below, we affirm in part and reverse in part.

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.] Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9–11–56 (c) have been met. In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

*Cowart v. Widener*, 287 Ga. 622, 623-24 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted); OCGA § 9-11-56 (c).

So viewed, the largely undisputed record before us reflects that Lowery was operating a mule-drawn carriage in a Christmas parade organized by the City of McRae. Claxton was riding in the carriage. After the parade had ended, Lowery and Claxton were riding the carriage back to Lowery's motor vehicle when the carriage was struck in the rear by a motor vehicle operated by a third party, resulting in injuries to Claxton.

2

In his deposition, Lowery stated that the carriage he was driving was designed to be pulled by one horse or mule. He further stated that the carriage was designed to only be pulled by an animal and could not be hooked up to a motor vehicle. The carriage was being pulled by a mule during the parade and at the time of the accident. Lowery did not charge Claxton a fee to ride in the carriage.

Following the accident, Claxton filed suit against Lowery.[1] In that action, which is separate from this case, she sought damages from Lowery arising out of the accident.

Lowery holds a liability insurance policy with Georgia Farm Bureau, which he claims covers any liability he may have for Claxton's injuries. In the same action, Claxton also claims that two uninsured motorist ("UM") policies she holds with Georgia Farm Bureau also provide coverage for her injuries arising from the accident.

The liability policy issued to Lowery contains an exclusion that Georgia Farm Bureau claims shields it from liability under the insurance contract. The exclusion provides that the policy "does not apply to . . . [t]he use of any livestock or other animal, with or without an accessory vehicle, for providing rides to any person for a

---

[1] The complaint for the underlying action between Lowery and Claxton does not appear in the record before us. However, the record reflects that further action in that case has been stayed pending the outcome of this case.

3

fee or in connection with or during a fair, charitable function, or similar type of event[.]" The policy defines "livestock" to include mules.

The UM policies issued to Claxton define "uninsured motor vehicle" to mean a "land motor vehicle or trailer of any type." The policy defines "trailer" to mean a "vehicle designed to be pulled by a . . . [p]rivate passenger auto [or] [p]ickup or van."

In its declaratory judgment action, Georgia Farm Bureau filed a motion for summary judgment, seeking a declaration (a) that the livestock exclusion in Lowery's policy applied and (b) that the carriage which Claxton was riding in was not an uninsured motor vehicle under the terms of Claxton's UM policies. The trial court denied the motion as to both issues. Georgia Farm Bureau sought a certificate of immediate review, which the trial court issued. It then filed an application for interlocutory review, which this Court granted. This appeal followed.

1. Georgia Farm Bureau first argues that the trial court erred by denying its motion for summary judgment with regard to its claim that the exclusion for livestock in Lowery's policy applies and that Georgia Farm Bureau has no liability to him under his policy. We agree with the trial court that summary judgment is not appropriate on this issue, but not for the reasons stated by the trial court.

4

The trial court's order focused specifically on the phrase "for a fee," determining that because neither Claxton or any other party had paid Lowery a fee to drive the carriage the exclusion did not apply. The trial court's order states that the policy excludes coverage where the insured provides rides "for a fee in connection with or during a fair, charitable function or similar type of event." However, the trial court's order misstates this clause in the policy by omitting the word "or." The actual terms of the policy provide an exclusion where the insured provides rides "for a fee *or* in connection with or during a fair, charitable function or similar type of event." (emphasis supplied) The trial court's omission of this small but critical word caused it to err in denying summary judgment on these grounds.

However, even considering all the words in the language of the exclusionary clause, summary judgment on this claim is not appropriate because there is a genuine issue of fact as to whether the parade at which the accident occurred is a "similar type of event" to a fair or charitable function and whether, because the parade had concluded at the time of the accident, Lowery was providing a ride to Claxton in the carriage "in connection with" the event. It is undisputed that Claxton was utilizing a mule to draw the carriage at all relevant times, including during the parade and as he and Claxton were returning to Lowery's vehicle at the time of the accident. However,

5

it remains disputed whether the parade constitutes a "fair, charitable function, or similar type of event." Although Georgia Farm Bureau argues valiantly that the Christmas parade was within the broad range of activities encompassed by the words "similar type of event," we disagree that those words are susceptible to only that meaning.

In support of its argument, Georgia Farm Bureau cites a federal decision from Kentucky in which an exclusion involving the term "event" was found to apply. *See Estate of Clem v. W. Heritage Ins. Co.*, No. 04-274-KSF, 2005 WL 6114321 at *4 (E.D.Ky. 2005). In that case, the provision excluded coverage for bodily injuries arising from "any contest, demonstration, event, exhibition, race or show." *Id*. The language construed in the Kentucky case and the language of the exclusionary clause before us in this case are plainly distinguishable, as the words "similar type of" modify the word "event" in the exclusion before us, while "event" stands alone and unlimited in the Kentucky case. While the exclusionary language in the Kentucky case is broad and expansive, seemingly excluding liability arising from participation in virtually any type of "event," in this case, we must go a step further. The inclusion of the words "similar type" require analysis of whether the Christmas parade (following which the accident here occurred) is similar to a fair or charitable function.

6

"The construction of an insurance contract is a matter of law for the court. When an exclusion is unambiguous and capable of but one reasonable construction, the trial court must expound the contract as made by the parties." *See Barnes v. Greater Ga. Life Ins. Co.*, 243 Ga. App. 149, 150 (1) (530 SE2d 748) (2000) (citations omitted). "A word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one." *Id*. at 150 (1) (citation omitted).

Here, although numerous terms are supplied with definitions in Lowery's insurance contract, the word "similar" is undefined. We must therefore consider the meaning of that term as it is usually and commonly employed. *See Claussen v. Aetna Cas. & Sur. Co.*, 259 Ga. 333, 334 (1) (380 SE2d 686) (1989). Merriam-Webster Dictionary defines "similar" variously to mean "having characteristics in common" and "alike in substance or essentials."[2] Whether one thing is similar to another thing is necessarily a multi-faceted, qualitative, and subjective determination, and it is no less so in determining whether the parade at issue here is similar to a fair or charitable

[2] *See* Merriam-Webster, *Similar*, https://www.merriam-webster.com/dictionary/similar (last visited March 13, 2018).

7

function.[3] In brief, whether something is similar to something else is almost inherently ambiguous.

Because "[a]ny ambiguities in the contract are strictly construed against the insurer as drafter of the document [and] any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed,"[4] we cannot say that, as a matter of law, the Christmas parade was an event similar to a fair or charitable function. Thus, this issue is not ripe for summary adjudication.

Likewise, whether Lowery was providing a ride in connection with the event at the time of the accident is also a question of fact. The record reflects that the parade had ended at the time of the accident and that Lowery and Claxton were riding the carriage back to Lowery's vehicle. As with the determination of whether the parade constitutes a "similar type of event" contemplated by the insurance policy, whether

---

[3] Depositions given by Lowery and Claxton do provide some evidence that is relevant to this issue. Both were asked about which entity or entities organized the parade, whether there was an entry fee, and whether the parade was associated with any other type of festivities, including booths or concessions. However, whether the circumstances surrounding the parade make it an event similar to a fair or charitable function is a matter subject to honest debate which is best resolved at trial.

[4] *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 269 Ga. 326, 328 (498 SE2d 492) (1998) (citation omitted).

8

Lowery's act of driving back to his vehicle was taken in connection with the parade is a question of fact for a jury to resolve.

In light of the foregoing, summary adjudication of Georgia Farm Bureau's claim in regard to Lowery's policy is not appropriate. We therefore affirm the trial court's denial of Georgia Farm Bureau's motion for summary judgment in regard to its coverage obligations under Lowery's policy.

2. Georgia Farm Bureau next argues that the trial court erred in denying its motion for summary judgment in regard to its coverage obligations under Claxton's UM policies. Here, the record before us makes clear that the carriage Claxton was riding in was not a motor vehicle under the terms of her UM policy. The policies define an "uninsured motor vehicle" as a "land motor vehicle or trailer of any type." The parties seemingly agree that the carriage was not a land motor vehicle. The policy defines "trailer" to mean a "vehicle designed to be pulled by a . . . [p]rivate passenger auto [or] [p]ickup or van."

Claxton and Lowery argue that the inclusion of the words "of any type" after "trailer" suggest that the policy is meant to give the most expansive application possible to the term "trailer." However, the definition of the term "trailer" in the UM policies sets a clear outer boundary relevant to the issues in this case: in order to

qualify as a trailer that can be considered an uninsured motor vehicle, the vehicle must be designed in such a way that it can be pulled by private passenger autos, pickups, or vans.

The undisputed testimony in the record shows that the carriage Claxton was riding in was designed only to be drawn by an animal and that it specifically could not be attached to or pulled by a motor vehicle. Thus, there is no genuine issue of fact as to whether the carriage constituted a trailer under the terms of Claxton's UM policies, and summary judgment was improperly denied by the trial court as to Georgia Farm Bureau's coverage obligations under those policies. *See Mason v. Allstate Ins. Co.*, 298 Ga. App. 308, 310 (1) (a) (680 SE2d 168) (2009) ("When an exclusion is unambiguous and capable of but one reasonable construction, the trial court must expound the contract as made by the parties." (citation omitted)). We therefore reverse the trial court's denial of summary judgment on this issue.

*Judgment affirmed in part and reversed in part. Ellington, P. J., and Senior Appellate Judge Herbert E. Phipps, J., concur*.