**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**January 8, 2019**

# In the Court of Appeals of Georgia

A18A2105. DIVISION SIX SPORTS, INC. v. HIRE DYNAMICS, LLC.

BARNES, Presiding Judge.

Defendant Division Six Sports, Inc. ("Division Six") appeals the trial court's order granting summary judgment in favor of Plaintiff Hire Dynamics, LLC ("Hire Dynamics") on the limited issue of whether Division Six ratified a 2013 written agreement executed on its behalf by an allegedly unauthorized agent. For the reasons discussed below, we reverse the trial court's partial grant of summary judgment to Hire Dynamics.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Summary judgments enjoy no presumption of correctness on

appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Ga. Farm Bureau Mut. Ins. Co. v. Claxton*, 345 Ga. App. 539, 539 (812 SE2d 167) (2018). See OCGA § 9-11-56 (c).

So viewed, the record reflects that Division Six operated a warehouse in Austell, Georgia. In 2007, Division Six entered into an agreement with Hire Dynamics to provide temporary employees for the warehouse (the "2007 Agreement"). Hire Dynamics provided temporary employees until Division Six stopped using Hire Dynamics' staffing services in 2008. It is undisputed that there is no outstanding balance owed to Hire Dynamics for the staffing services provided in 2007 and 2008.

In 2013, Hire Dynamics began providing temporary employees again to Division Six for use in its Austell warehouse and continued to do so until 2015. Hire Dynamics sent weekly invoices to Division Six, and Division Six agreed to a payment plan after some of the invoices became past due. Although Division Six paid some of the outstanding balance that Hire Dynamics claimed was owed for staffing

services, disputes arose between the parties as to whether Hire Dynamics properly accounted for and credited all of the payments it received from Division Six; whether the invoices generated by Hire Dynamics charged the correct amount for certain staffing services; and whether the invoices were correct as to the number and types of temporary employees provided to Division Six.

Hire Dynamics sued Division Six for breach of contract, seeking payment of unpaid invoices in the amount of $241,033.80, plus prejudgment interest and attorney fees. Hire Dynamics alleged in its complaint that the 2007 Agreement governed the parties' relationship and that Division Six breached that agreement by failing to pay for the services rendered as reflected in the invoices. Division Six answered, denying that the 2007 Agreement governed the transactions at issue, contesting liability for the outstanding balances stated on the invoices, and disputing that Hire Dynamics could recover prejudgment interest or attorney fees.

Hire Dynamics thereafter moved for summary judgment and submitted the affidavit of Jon Neff, its Chief Financial Officer ("CFO"), in support of its motion. Attached as exhibits to Neff's affidavit were the 2007 Agreement and the outstanding invoices that Hire Dynamics claimed that Division Six was obligated to pay. In his affidavit, Neff sought to authenticate the unpaid invoices; averred that the temporary

3

staffing services that Hire Dynamics provided to Division Six as reflected in the unpaid invoices were governed by the terms and conditions set forth in the 2007 Agreement; and calculated the principal amount owed by Division Six on the invoices and the amount of interest that had accrued.

After Hire Dynamics filed its motion for summary judgment, Division Six deposed Neff, Division Six's corporate representative under OCGA § 9-11-30 (b)(6). Neff testified that the day before his deposition, he had located a written agreement between Hire Dynamics and Division Six for temporary staffing and recruitment services entered on May 28, 2013 (the "2013 Agreement"). The 2013 Agreement had been executed by Neff and by Shawn Baro, Division Six's Director of Operations. The 2013 Agreement, unlike the 2007 Agreement, contained a provision authorizing an award of reasonable attorney fees incurred by Hire Dynamics in collecting overdue amounts owed for services rendered. According to Neff, he had previously asked Hire Dynamics' Credit Collections Supervisor to compile the contracts and invoices relevant to the present case, but the 2013 Agreement had not been found until Neff personally searched the corporate records the day before his deposition. Neff testified that he signed many agreements on behalf of Hire Dynamics and had not remembered signing the 2013 Agreement when he prepared his affidavit earlier in the litigation.

4

Division Six subsequently filed its brief opposing Hire Dynamics' motion for summary judgment, contending that there were genuine issues of material fact as to whether the 2007 Agreement, the 2013 Agreement, or an implied contract for services governed the parties' relationship from 2013 to 2015. Division Six also argued that there were material factual issues regarding the accuracy of the invoices and the amount owed by Division Six. Additionally, Division Six maintained that there were genuine issues of material fact as to whether Hire Dynamics would be entitled to prejudgment interest and reasonable attorney fees if it succeeded on its contract claim, including issues of fact pertaining to whether Baro had authority to bind Division Six to the 2013 Agreement that contained an attorney fees provision.

In support of its brief opposing summary judgment, Division Six submitted the affidavit of Ira Leibowitz, the President of Division Six since 2009 who had personal knowledge of the relationship between Division Six and Hire Dynamics. Leibowitz averred that the 2007 Agreement no longer governed the parties' contractual relationship in 2013 because the parties had not done business together for several years by that point. Leibowitz also averred that while Hire Dynamics began providing temporary staffing services to Division Six again in 2013, the parties had not entered into a written agreement memorializing their renewed business relationship. As to the

2013 Agreement, Leibowitz averred that he had been shown the agreement the day before Neff's deposition, and Baro had lacked authority to sign it on behalf of Division Six. In addition, Leibowitz averred that Division Six submitted payments to Hire Dynamics that were never properly credited to the balance it owed to Hire Dynamics; that some of the temporary employees listed on the invoices never worked for Division Six; that the invoices contained charges for hours never worked; and that Hire Dynamics increased the price charged for certain employees without Division Six's knowledge.

After reviewing the submissions of the parties and hearing argument, the trial court granted in part and denied in part Hire Dynamics' motion for summary judgment. More specifically, the trial court concluded that, as a matter of law, the 2013 Agreement governed the renewed business relationship between Division Six and Hire Dynamics from 2013 to 2015 based on the doctrine of ratification. In this regard, the trial court determined that, irrespective of whether Baro had authority to execute the 2013 Agreement on behalf of Division Six, the uncontroverted evidence showed that Division Six ratified the 2013 Agreement by accepting staffing services from Hire Dynamics and entering into a payment plan to pay overdue invoices. The trial court denied summary judgment to Hire Dynamics

6

on all remaining issues, including the outstanding balance owed by Division Six; whether the parties performed their obligations under the 2013 Agreement; whether Hire Dynamics provided the correct number of employees requested by Division Six; and whether the invoices submitted by Hire Dynamics accurately reflected the number of employees provided to Division Six and the amount owed for services rendered.

Division Six now appeals the trial court's partial grant of summary judgment to Hire Dynamics.[1] According to Division Six, the trial court erred in concluding that the uncontroverted evidence showed as a matter of law that it ratified the 2013 Agreement and thus was bound by its terms.

Under principles of agency, a corporation that ratifies a contract executed by one of its employees is bound by its terms, even if he or she did not have actual or apparent authority to enter the contract on behalf of the corporation. See *Rains v. Dolphin Mtg. Corp.*, 241 Ga. App. 611, 614-615 (4) (525 SE2d 370) (1999); *Jack Fred Co. v. Lago*, 96 Ga. App. 675, 679 (2) (101 SE2d 165) (1957). "The burden of proving ratification is on the party asserting it," *Griggs v. Dodson*, 223 Ga. 164, 171

---

[1] Hire Dynamics has not filed a cross-appeal challenging the trial court's denial in part of its motion for summary judgment.

7

(2) (154 SE2d 252) (1967), and "[w]hether a ratification occurred is generally a question of fact for the jury." *Rains*, 241 Ga. App. at 614 (4).

The doctrine of ratification is codified in OCGA § 10-6-52, which provides: "A ratification by the principal shall relate back to the act ratified and shall take effect as if originally authorized. A ratification may be express or implied from the acts or silence of the principal. A ratification once made may not be revoked." As we have further explained:

> Where a principal is informed by his agent of what he has done, the principal must express his dissatisfaction within a reasonable time, otherwise his assent to his agent's acts will be presumed. Unless the principal repudiates the act promptly or within a reasonable time, a ratification will be presumed. *But in order for a ratification to be binding, the principal must have had full knowledge of all material facts.*

(Citations and punctuation omitted; emphasis supplied.) *McKean v. GGNSC Atlanta*, 329 Ga. App. 507, 511 (1) (b) (765 SE2d 681) (2014). See *Stewart v. Storch*, 274 Ga. App. 242, 246 (1) (617 SE2d 218) (2005) ("[R]atification necessarily implies complete knowledge of all material facts relating to the transaction.") (punctuation and footnote omitted); Rest. (Third) of Agency § 4.06 (2006) ("A person is not bound by a ratification made without knowledge of material facts involved in the original

8

act when the person was unaware of such lack of knowledge."). Ratification therefore binds the principal only if the "principal knows of the agent's unauthorized act." (Citation and punctuation omitted.) *Ellis v. Fuller*, 282 Ga. App. 307, 310 (2) (638 SE2d 433) (2006). See *McKean*, 329 Ga. App. at 511 (1) (b) (principal did not ratify agreement, where there was no evidence that principal knew of agent's unauthorized act of signing the agreement on the principal's behalf); *Bresnahan v. Lighthouse Mission*, 230 Ga. App. 389, 392 (2) (496 SE2d 351) (1998) ("For ratification to be effective, the principal must know of the agent's unauthorized act and, with full knowledge of all the material facts, accept and retain the benefits of the unauthorized act.") (citation omitted).

Applying these principles to the present case, we conclude that genuine issues of material fact exist as to whether Division Six knew of Baro's allegedly unauthorized act of executing the 2013 Agreement on its behalf in connection with the temporary staffing services received from Hire Dynamics from 2013 to 2015. Leibowitz, Division Six's President, had personal knowledge of the temporary staffing services provided by Hire Dynamics. In his affidavit, Leibowitz averred that Division Six and Hire Dynamics had never entered into a written agreement memorializing their renewed business relationship in 2013, that he had been shown

9

the 2013 Agreement only the day before Neff's deposition, and that Baro lacked authority to enter into the 2013 Agreement on Division Six's behalf. Moreover, Neff, Hire Dynamics' CFO, never testified that Leibowitz had been aware of the 2013 Agreement, and Hire Dynamics identified no other employees of Division Six who knew that Baro had executed the 2013 Agreement when Hire Dynamics provided temporary staffing services to Division Six from 2013 to 2015. Given this record, viewed in the light most favorable to Division Six as the nonmoving party, a jury could find that Division Six lacked knowledge that Baro had executed the 2013 Agreement.

In granting summary judgment to Hire Dynamics on the issue of ratification, the trial court emphasized that Division Six accepted temporary staffing services from Hire Dynamics after the date that Baro executed 2013 Agreement .

> A presumption of ratification can arise from slight acts of confirmation, or from mere silence or acquiescence, or where the principal receives and holds the fruits of the agent's act. However, assuming that the corporation did receive the benefits of the plaintiff's alleged services, in order to prove ratification by the corporation[,] [the plaintiff] must prove that the principal, the governing body of the corporation or some official or agent who had authority to receive such notice had full knowledge of all material facts in connection with the transaction in question. And such knowledge must have been acquired by the principal otherwise

10

than by the knowledge of the agent the ratification of whose acts is contended for.

(Punctuation and footnotes omitted.) *Governor's Towne Club v. Caffrey Constr. Co.*, 273 Ga. App. 284, 287-288 (2) (614 SE2d 892) (2005). As previously discussed, a jury in the present case could find that, other than Baro, no corporate official of Division Six had full knowledge of the 2013 Agreement when Division Six accepted the benefit of temporary staffing services from Hire Dynamics.[2] And, to the extent that any inferences could be drawn from Division Six's acceptance of temporary staffing services, Division Six must be "given the benefit of all reasonable doubts and possible inferences." (Citation and punctuation omitted.) *Nguyen v. Southwestern Emergency Physicians*, 298 Ga. 75, 82 (3) (779 SE2d 334) (2015). Hire Dynamics therefore was not entitled to summary judgment on the issue of ratification based simply on Division Six's acceptance of temporary staffing services.

[2] The fact that Division Six accepted temporary staffing services from Hire Dynamics does not mean that the parties must have had a written contract governing the provision of those services. Viewed in favor of Division Six as the nonmovant, the evidence of Division Six's acceptance of temporary staffing services could support a finding by a jury that the parties simply had an implied contract to pay the reasonable value of services rendered by Hire Dynamics. See, e.g., OCGA § 9-2-7 ("Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof. . . .").

11

In granting summary judgment to Hire Dynamics, the trial court also pointed out that Division Six had entered into a payment plan to pay unpaid invoices owed to Hire Dynamics. But, Division Six's agreement to a payment plan for certain overdue invoices did not demand a finding that Division Six knew that Baro had signed the 2013 Agreement. The complete terms of the payment plan were never set forth in the record, and there was no evidence presented that the parties acknowledged the existence of the 2013 Agreement as part of the payment plan. Furthermore, the 2013 Agreement contained many terms and conditions beyond what was set forth in the invoices. Hence, Division Six's agreement to pay certain invoices did not uncontrovertedly demonstrate knowledge of the 2013 Agreement.

Accordingly, viewed in the light most favorable to Division Six as the non-movant, with all reasonable inferences drawn in its favor, the record would support a finding that Division Six lacked knowledge that Baro had executed the 2013 Agreement. The trial court therefore erred in granting partial summary judgment to Hire Dynamics based on the doctrine of ratification. See *Gift Collection v. Small Business Admin.*, 738 F. Supp. 487, 493 (N.D. Ga. 1989) (summary judgment denied on issue of ratification under Georgia law, where there was evidence that corporation lacked knowledge that its vice president executed deed and guaranty purportedly on

12

the corporation's behalf in connection with loan transaction); *McKean*, 329 Ga. App. at 511-512 (1) (b) (plaintiff did not ratify arbitration contract, where there was no evidence that she had knowledge of the contract, or that it had been executed on her behalf); *Merritt v. Marlin Outdoor Advertising*, 298 Ga. App. 87, 91 (2) (b) (679 SE2d 97) (2009) (whether trust ratified lease was for jury to decide, where there was conflicting evidence as to whether trustees knew of the lease that had purportedly been executed on behalf of the trust). Compare *A&S Group v. Murray*, 291 Ga. App. 331, 334 (1) (661 SE2d 701) (2008) (corporation bound by employment contract, where evidence showed that one of the co-owners of the corporation had full knowledge of the contract signed on corporation's behalf by allegedly unauthorized agent).

*Judgment reversed. McMillian and Reese, JJ., concur*.